In United States v. Durham, 2010, in an opinion authored by Judge By and Judge Grunder was on the panel, the court ruled that a condition of supervised release that required GPS monitoring at the discretion of the probation officer was appropriate. The court noted that the defendant's case or the defendant's bond had been revoked because he failed to appear at a bond review hearing, and that the magistrate had indicated that he was a flight risk, which indicates the need for greater monitoring. So I suppose this case presents the question of, well, what happens when you don't have a defendant who's been out of place where a defendant hasn't either while on supervision or after imprisonment or before the trial, he hasn't indicated that he's a flight risk. He hasn't really done anything to warrant a judge knowing where he is every minute of the day, which is the reason that the judge imposed this condition in Mr. Johnson's case. The judge's I thought the judge did it because he felt this person was a danger to the community with his record and with 21 supervised release violations. I think those are related, Judge, that I think because he had some violations, a number of violations to be sure, the judge indicated that she wanted to know where he was at all times and what he was doing. So is that unreasonable in light of his record? Well, I would assert that in light of the fact that this GPS monitoring system really doesn't address that issue. In other words, none of the violations and other things that he failed to do while he was being supervised involved being somewhere where he shouldn't be. GPS monitoring wasn't going to address any problems that he had. In other words, his offense, underlying offense, was possession of child pornography in his own home. His fulfill his treatment obligations or doing things in his home that violated his conditions of supervision. So under those circumstances, there are plenty of other conditions of supervised release that address those matters. He's subject to search. He can't associate with certain under certain circumstances. I guess the crux of our argument is that there's no requirement of any kind of reasonable suspicion that he's doing anything wrong. He's going to be monitored at all times without any kind of suspicion that he is now doing anything wrong, and we standard condition of release, or is this . . . I mean, I know it's not a standard condition on the form, but do you just know whether the court imposes this regularly, or is it in this case especially because of some circumstance? No, I don't have . . . You don't know. . . enough experience with what the judge does in cases that I'm not involved with. All right. Well, I'll ask the government. I'll ask the government. I do know that obviously it's a condition that . . . I don't know this. I suspect that it's a condition that's tied to the nature of the underlying offense that is . . . Well, all the judge said is this was a conviction for a serious offense. People who are on supervision after conviction for a serious offense such as this have forfeited certain rights, and we as the court have the rights to monitor their behavior. Yeah, I guess the question is at what point is a GPS monitoring warrant? I suspect if you rule in this case that Mr. Johnson can be subject to GPS monitoring just because of the nature of the offense and he's committed some violations, it'll certainly become more prevalent than it is now. How does it work? Well, that's . . . I was going to bring that up. There's . . . at least in the cases I've been involved with, there's a device that you have to wear around your leg, and it transmits information to somebody, I think in another state, who monitors it. And then if there's . . . so . . . there is a . . . and then you have to keep recharging the batteries because they wear out. And then Mr. Johnson also is required to pay for this. It's fairly expensive. Can somebody in Cedar Rapids in the probation office go on a computer and say at this moment that where is Johnson and look it up or . . . If not directly, at least indirectly. In other words, I think it might be transmitted to some other place and then networked in back to the probation officer in Cedar Rapids. That's my understanding. So that essentially there is a 24-hour warrantless, suspicionless search of a person's whereabouts. Then maybe I'm going too far with this, but in theory, if you could require a person to wear something around their leg 24 hours a day, then would it be going too far to say implant a chip in their leg so to better facilitate monitoring of where they are? I mean, at what point do these intrusions and restrictions become too onerous? And I think the court out of . . . requires something more than what's shown in this case, that a person is generally noncompliant with supervision in order to or a person who's on supervisory lease. I'll reserve any time that I have left for rebuttal. Very well. We'll hear next from Ms. Baumann for the government. Thank you, Your Honor. May it please the court, counsel. This is a situation where a defendant has been given multiple opportunities to comply with the court's requirements and be truthful and comply with what the probation office asks of him, and he has demonstrated he is unwilling to do that. Judge Gruder, as you pointed out, the first violations that occurred in April of 2012 involved 21 violations, everything from illegal drug use to failure to comply with sex offender treatment to possession of pornography and drug paraphernalia. So again, this time in the December 2013 revocation hearing, similar myriad violations. The court . . . Do any of them relate to where he physically is at at any given time? Your Honor, the government concedes he has not been out of place of assignment. One thing that Mr. Meyer said that may be slightly incorrect is he said that the defendant is doing things in his home that are violations. The record doesn't necessarily demonstrate that while we have not caught him out of place of assignment. For example, he produced pornography, adult pornography using photographic equipment that he was not supposed to have, and we don't know where he did that. That is one of the things that Judge Reed was concerned about. She didn't know where he was doing some of the violations that he was caught with this current time. Did he get . . . Do you know where he got the drug paraphernalia or the drugs that he was caught with? That's not in the record either, Your Honor. There was synthetic marijuana packaging both in a trash can in his apartment and then in a shared basement. We do know that initially he admitted to the probation officers that he was with people he was prohibited against being with. He was with people who were consuming drugs, and then at the hearing he denied that, and so he was untruthful with the court there. We don't know where he got them. Obviously, he's not subject to home detention, so he was allowed to go out of his home to establishments that sell things, but not drugs or synthetic drugs. Can you answer my question whether this is a standard condition in the district or whether this is unusual or special for this defendant? We see it. It's not something the court imposes in every case. I certainly am only looking at special conditions when they become an issue in a case, but this is certainly not the only case where Judge Reed has imposed that special condition, but I can't answer the question as to whether it's imposed in every SORNA case or every sex offender case. I don't know that. Did the government request it here or was it at the court's initiative? The court's initiative, but also I would point out to the court that in the first revocation which occurred in April of 2012, that judgment in a criminal case also had this condition in it. It was numbered as number 13 rather than 14, but it was present. We have no indication in the record that Mr. Johnson was put on GPS tracking when he was released from prison in February of 2013, although it was a condition that was allowed by the court at that time. Something Mr. Meyer mentioned that where do we go, when is it going too far, is putting a chip in someone's head too far? That's not this case. This case is electronic monitoring by a GPS monitor, and so the court need not consider that question. But maybe phrased a different way, if we allowed it here, wouldn't we effectively be blessing it in every case? Not necessarily, Your Honor. The district court obviously has to do a fact-intensive inquiry in every case to determine which supervised release conditions are appropriate. What were the facts here that the judge relied upon? As far as I can tell, it was just that the person was convicted of a serious offense and therefore forfeited certain rights, and the courts have a right to monitor their behavior. Correct, Your Honor. The court is aware, obviously, of 18 U.S. Code 3583D, which says which conditions should be imposed and which conditions may be imposed, referencing 3553A. That statutory provision also says the court may impose other conditions as it sees necessary. Here, this defendant has twice violated, twice been revoked for violations, multiple violations of his supervised release conditions, and so the court went through and examined each of those, spoke with the defendant, he admitted most of the violations, the judge found a couple additional violations regarding the drugs and drug paraphernalia, and determined that the court needed to give the probation officer another tool to monitor this individual's behavior because he is so unwilling to follow the court's requirements. I thought you said this was a condition imposed on the original conviction. It was imposed in 2012. He was originally convicted in 2005. It was not part of the Oh, so that's when the judge thought they needed the additional tool, in 2012. Right. And is there more of a record at that hearing as to the reasoning for the condition? I didn't look at that, Your Honor. I apologize. And do you agree with Mr. Meyer's explanation of how it works? I do, Your Honor. I know that it's not in the record, but I know that the BI Incorporated is a company that the probation office uses nationwide. I don't know. It was my understanding that they had local access. The local probation officers have access to the information, but I don't know that, and that's not in the record. I don't know for sure. Was that relevant to whether it's a reasonable condition if the probation office doesn't even have access to the information? Well, it is relevant, but it's my understanding that they do, and there's nothing in the record to show that the local probation officer wouldn't have access to that. There's nothing really in the record at all about how it works? No. No. The other questions besides the issue of whether this condition is reasonably related to the deprivation of liberty than is reasonably necessary is the argument that it's a warrantless search and that it's a financial burden on the defendant. We've briefed those, but just briefly, the warrantless search argument, I think, is a non-starter. It's well established in this country that probationers and supervised releasees have a diminished privacy interest. The statute, Congress Pass 3583D, specifically says that people on supervised release can be subject to a search at any time, specifically sex offenders. And the financial burden argument, I think one thing that's certainly in play is that the district court can at any time modify the conditions of release. There's no indication that this GPS monitoring was even, it was imposed, but whether it was activated last time. And the district court here has cited twice that the district court is aware of its ability to modify conditions of supervised release at any time. If the court has no further questions, I will yield the rest of my time. Thank you, your honors. You are, you have concluded. Thank you. And does Mr. Meyer have additional time? Yes, sir, just about two minutes. Two minutes? Can you put the wrap on it in two minutes? Well, quicker than that, if you don't have any questions, you know, it's been a long morning. I don't really have anything to add. Good answer. I like answers like that. It has been a long morning. Does that conclude the docket for today, Madam Clerk? Yes, sir, it does. In that event, then, this